# FOR PUBLICATION



**FILED**
Oct 10 2012, 9:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT A.W.:

**MICHAEL R. AUGER**
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**RICHARD KOSMALA**
DCS Brown County Office
Nashville, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF G.W. (Minor Child) | ) | |
| | ) | |
| A.W. (Mother) and J.W. (Stepfather), | ) | |
| | ) | |
| Appellants-Respondents, | ) | |
| | ) | |
| vs. | ) | No. 07A01-1201-JM-6 |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE BROWN CIRCUIT COURT
The Honorable Judith A. Stewart, Judge
Cause No. 07C01-1112-JM-71

**October 10, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

May a court order a parent to make a child available for an interview requested by the Indiana Department of Child Services ("DCS") to assess that child's "condition" pursuant to Indiana Code Section 31-33-8-7, where the child's older sibling has made and then recanted allegations of sexual abuse against a family member who lives in the children's home? The trial court in this case answered that question in the affirmative, and we agree.

**Facts and Procedural History**

In November 2011, nine-year-old G.W. and her twelve-year-old sister, M.F., lived with their mother, A.W. ("Mother"), and stepfather, J.W. ("Stepfather"), in Trafalgar. M.F. told Mother that Stepfather had kissed her and rubbed her legs while they watched television and had cuddled with her in bed and touched her bottom. In response to these revelations, Mother took M.F. to a counseling session in Greenwood on November 14, 2011. Shortly after the session ended, Mother was contacted by DCS about M.F.'s allegations against Stepfather.

Indiana Code Section 31-33-8-1(a) provides that DCS "shall initiate an appropriately thorough child protection assessment of every report of known or suspected child abuse or neglect the department receives, whether in accordance with this article or otherwise." "If the report alleges a child may be a victim of child abuse, the assessment shall be initiated immediately, but not later than twenty-four (24) hours after receipt of the report." Ind. Code § 31-33-8-1(c). Indiana Code Section 31-33-8-6 provides that "[t]he primary purpose of the assessment is the protection of the child." Pursuant to Indiana Code Section 31-33-8-7(b), the assessment may include "[a]n interview with the subject child." DCS requested an

2

interview with M.F. Prior to the interview, DCS received copies of diary entries typed on a computer owned by M.F.'s paternal grandmother, but stored under M.F.'s password, that describe sexual intercourse between M.F. and Stepfather. Also, M.F.'s biological father reported to DCS that M.F. had told G.W. about Stepfather's inappropriate touching and that G.W. then told Mother about the touching.

During her interview at Susie's Place in Bloomington, M.F. recanted her allegations against Stepfather. She said that she made those allegations because she was angry with Mother for not spending as much time with her or doing as many things with her as she once had. M.F. also denied making the diary entries and said that she was the one who had told Mother about the touching incidents. Despite M.F.'s recantation, DCS requested an interview with G.W. Mother refused the request.

On December 15, 2011, DCS filed an amended verified emergency petition to compel Mother and Stepfather to make G.W. available for an interview. The petition reads in pertinent part as follows:

4.      Good cause exists to believe that [G.W.] may be at risk. Access to [G.W.] by [DCS] is necessary to ensure her safety and to complete the investigation. The child['s] sister, [M.F.], is alleged to be the victim of sexual abuse by her Mother's current husband. A safety plan for the child has not been established and DCS cannot ensure the safety of the child.

5.      That [DCS] feels that in order to carry out its investigative duties it is necessary for an authorized Child Welfare Investigator to have access to [G.W.] and that it would be in the best interest of [G.W.] that [Mother] and [Stepfather] be ordered to cooperate in the ongoing DCS investigation and allow the DCS investigator to conduct interviews of the minor child.

3

6.     Emergency exists in that no formal arrangement[s] have been made to ensure [G.W.'s] safety in the home.

Appellee's App. at 1-2.

DCS based its petition on three statutes, only two of which are mentioned in the trial court's order. The first is Indiana Code Section 31-33-8-7, which reads as follows:

(a) The department's assessment, to the extent that is reasonably possible, must include the following:
(1) The nature, extent, and cause of the known or suspected child abuse or neglect.
(2) The identity of the person allegedly responsible for the child abuse or neglect.
(3) The names and conditions of other children in the home.
(4) An evaluation of the parent, guardian, custodian or person responsible for the care of the child.
(5) The home environment and the relationship of the child to the parent, guardian, or custodian or other persons responsible for the child's care.
(6) All other data considered pertinent.

(b) The assessment may include the following:
(1) A visit to the child's home.
(2) An interview with the subject child.
(3) A physical, psychological, or psychiatric examination of any child in the home.

(c) If:
(1) admission to the home, the school, or any other place that the child may be; or
(2) permission of the parent, guardian, custodian, or other persons responsible for the child for the physical, psychological, or psychiatric examination;
under subsection (b) cannot be obtained, the juvenile court, upon good cause shown, shall follow the procedures under IC 31-32-12.

(d) If a custodial parent, a guardian, or a custodian of a child refuses to allow the department to interview the child after the caseworker has attempted to obtain the consent of the custodial parent, guardian, or custodian to interview the child, the department may petition a court to order the custodial

4

parent, guardian, or custodian to make the child available to be interviewed by the caseworker.

> (e) If the court finds that:
> (1) a custodial parent, a guardian, or a custodian has been informed of the hearing on a petition described under subsection (d); and
> (2) the department has made reasonable and unsuccessful efforts to obtain the consent of the custodial parent, guardian, or custodian to interview the child;
> the court shall specify in the order the efforts the department made to obtain the consent of the custodial parent, guardian, or custodian and may grant the motion to interview the child, either with or without the custodial parent, guardian, or custodian being present.

The second statute is 31-32-13-1, which provides:

> Upon a juvenile court's motion or upon the motion of a child's parent, guardian, custodian, or guardian ad litem, a probation officer, a caseworker, the prosecuting attorney, the attorney for the department of child services, or any person providing services to the child or the child's parent, guardian, or custodian, the juvenile court may issue an order:
> (1) to control the conduct of any person in relation to the child;
> (2) to provide a child with an examination or treatment under IC 31-32-12; or
> (3) to prevent a child from leaving the court's jurisdiction.

On December 20, 2011, the trial court held a hearing on the petition. DCS family case manager Ashley Collins testified that she wanted to interview G.W. "to make sure that she's safe and also discuss the inconsistencies" regarding how Mother learned about the alleged abuse. Tr. at 11. On December 27, 2011, the trial court issued an order granting the petition that reads in pertinent part as follows:

> Although I.C. 31-33-8-7 does not specifically address an interview of a child other than a subject child, I.C. 31-33-8-7(a) does require the assessment to include the name *and condition* of other children in the home (emphasis added.) The court finds that this provision, combined with I.C. 31-32-13-1

5

provides authority for the court's order.[1] The court finds good cause for the order based on the initial allegations made by [G.W.'s] sister of child molestation by, and reported diary entries describing sexual intercourse with, [G.W.'s] stepfather who resides in [G.W.'s] home. Even though the evidence indicated that [G.W.'s] sister subsequently recanted the allegations and denied being the author of the diary entries, given the serious nature of the original allegations and the relatively close age of [G.W.] to her sister, the court finds good cause to grant [DCS's] request for an interview of [G.W.]. The court further finds that [DCS] has made reasonable efforts to obtain the consent of the custodial parent for the interview, as shown by the evidence presented at the hearing, from both the Family Case Manager and the child's mother.

**IT IS THEREFORE ORDERED** that [Mother] shall permit [G.W.] to be interviewed by [DCS]. The interview shall be conducted at Susie's Place in Bloomington, IN at a time and date scheduled by [DCS].

Appellant's App. at 5-6. The trial court stayed its order pending Mother's appeal.[2]

### Discussion and Decision

Mother challenges the trial court's grant of DCS's petition to compel. We note that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects a parent's fundamental right to raise her child without undue interference by the state. *In re T.H.*, 856 N.E.2d 1247, 1250 (Ind. Ct. App. 2006). That fundamental right is not unlimited, however, because "the state has a compelling interest in protecting the welfare of children. When parents neglect, abuse, or abandon their children, the state has the authority under its

---

[1] Although the trial court's order does not so specify, based on our review of the hearing transcript and the fact that the order does not mention Indiana Code Chapter 31-32-12, we conclude that the court is referring here to its authority to issue an order to "control the conduct of any person in relation to the child" pursuant to Indiana Code Section 31-32-13-1.

[2] We note that Stepfather did not file a notice of appeal, presumably because the trial court did not order him to do anything. We have included Stepfather in the case caption because he was named as a respondent in DCS's petition to compel.

6

parens patriae power to intervene." *G.B. v. Dearborn Cnty. Div. of Family & Children*, 754

N.E.2d 1027, 1032 (Ind. Ct. App. 2001), *trans. denied* (2002).

Here, Mother contends that the trial court erred in concluding that Indiana Code

Section 31-33-8-7 authorizes a court to compel a parent to make available for an interview a

child who is not the subject of a child abuse investigation.[3]  Our standard of review is well

settled.

> A question of statutory interpretation is a matter of law, and we are neither bound by, nor are we required to give deference to, the trial court's interpretation. When interpreting a statute, we look to the express language of the statute and the rules of statutory construction. The Court's objective when construing the meaning of a statute is to ascertain and give effect to the legislative intent and to interpret the statute in such a manner as to prevent absurdity and to advance public convenience. In so doing, we must be mindful of the purpose of the statute, as well as the effect of such an interpretation. We presume that our legislature intended its language be applied in a logical manner consistent with the underlying goals and policy of the statute.

*KPMG, Peat Marwick, LLP v. Carmel Fin. Corp.*, 784 N.E.2d 1057, 1060 (Ind. Ct. App.

2003) (citations omitted).  Statutes relating to the same general subject matter are in pari

materia (on the same subject) and should be construed together to produce a harmonious

statutory scheme.  *Klotz v. Hoyt*, 900 N.E.2d 1, 5 (Ind. 2009).

Mother argues that

> Indiana Code 31-33-8-7 is clear about what must be included in an assessment and what may be included in an assessment.  Interestingly, upon a strict reading of the statute, an interview of the subject child is not something that **must** be done by DCS in cases of suspected abuse and neglect.

---

[3] We note that Mother devotes a portion of her argument to Indiana Code Section 31-32-12-1, which DCS mentioned in its petition to compel, but because the trial court did not cite that statute as a basis for its ruling, we do not consider it here.  We also note that Mother makes no argument regarding Indiana Code Section 31-32-13-1, and DCS does not rely on it on appeal.

Appellant's Br. at 9-10 (citing Ind. Code § 31-33-8-7(b)(2)). Be that as it may, the statute also provides that an assessment, "to the extent that is reasonably possible, *must include* … [t]he names and conditions of other children in the home." Ind. Code § 31-33-8-7(a)(3) (emphasis added). And the statute specifically contemplates that DCS may interview those "other children" to determine their conditions and obtain a court order if necessary to facilitate such interviews. *See* Ind. Code § 31-33-8-7(d) ("If a custodial parent, a guardian, or a custodian of *a child* [as opposed to 'the child' or 'the subject child' mentioned elsewhere in the statute] refuses to allow the department to interview the child after the caseworker has attempted to obtain the consent of the custodial parent, guardian, or custodian to interview the child, the department may petition a court to order the custodial parent, guardian, or custodian to make the child available to be interviewed by the caseworker.") (emphasis added).

Mother challenges the intrusiveness of and necessity for an interview in this case:

[W]hat is being requested is not simply to take a look at G.W. and to ensure her safety and to determine her physical "condition" as suggested by Indiana Code [Section] 31-33-8-7(a)(3), but what is being sought is what has been described as a "forensic interview" of [G.W.]. In this interview, [G.W.] will be taken to a facility called "Susie's Place" in Bloomington, Indiana. There, [G.W.] is taken from her parents, who are not permitted to witness the interview, and is subjected to being examined by a stranger while several on-lookers from DCS and other law enforcement agents watch from another room.

The evidence that was presented at the hearing on the DCS petition clearly demonstrated that the individual responsible for causing certain allegations of abuse to be made had recanted those allegations. Furthermore, there have never been any allegations of wrong doing [sic] involving G.W. or that G.W. had been the victim of either child abuse or neglect. As such, it was improper for the trial court to cause G.W., over the objection of her mother, to

8

subject to a forensic examination upon the basis of determining her "condition." All of the evidence at the hearing of the DCS Petition established that G.W. had been attending school regularly since the allegations that were made by her sister, and as such, her "condition" was not in dispute. Moreover, to the extent that Indiana Code [Section] 31-33-8-7(a) requires the DCS to determine the "condition" of G.W. for use in its assessment, the relief sought of a "forensic interview" at Susie's Place in Bloomington is certainly much more than is necessary in order to determine her condition. It certainly cannot be argued that the language of the statute allows a child to be placed in a location outside the presence of her parents, witnessed by numerous agents of the State including State Police Officers, Department of Child Services Employees, and other law enforcement agents, and subjected to a battery of questions solely under the auspices of determining the child's "condition."

Appellant's Br. at 11-12 (citations to appendix and transcript omitted).

As for Mother's suggestion that Indiana Code Section 31-33-8-7(a)(3) refers only to a child's physical condition, we disagree. The statute contains no such limitation, and we may not read one into it. *See Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1117 (Ind. Ct. App. 2008) ("We may not read into a statute that which is not the expressed intent of the legislature."). In the context of a child abuse investigation, common sense dictates that DCS must assess the overall conditions of other children in the home, including their physical, psychological, and emotional status.

Regarding Mother's complaints about the proposed interview arrangements, she cites no statutory or constitutional prohibitions against them, and we are aware of none. In fact, Indiana Code Section 31-33-8-2 requires DCS to notify the appropriate law enforcement agency when it receives a report of suspected child abuse, and that agency must investigate the report in conjunction with DCS. Moreover, Indiana Code Section 31-33-8-7(e) specifically provides that the court "may grant the motion to interview the child, either with

9

or without the custodial parent … being present." Also, nothing prohibits DCS from designating a third party to interview a child outside the home.[4]

Mother's insistence that an interview is unnecessary because M.F. recanted her allegations against Stepfather and denied writing the aforementioned diary entries disregards DCS's threshold obligation to assess the "conditions of other children in the home" pursuant to Indiana Code Section 31-33-8-7(a)(3). The trial court heard testimony from DCS's Collins that "recantation is a part of [the] disclosure process" and that the police were still analyzing the computer on which the incriminating diary entries were typed to determine whether M.F. had actually written them. Tr. at 14, 15. Mother's assertion that M.F.'s recantation and denial must be taken at face value is unsupported by either law or logic.

For largely the same reasons, we are unpersuaded by Mother's assertion that an interview of G.W. is unnecessary because there are no allegations of abuse involving G.W. and Mother testified that G.W. has never been in any danger. As the trial court noted in its order, M.F.'s allegations are serious, and she and G.W. are relatively close in age. Simply because no allegations have been made regarding G.W. and Mother has vouched for her safety does not mean that DCS's and the trial court's concerns are unwarranted. By the same

---

[4] With respect to Susie's Place, DCS's counsel explained that DCS was

just offering that as a, as a[n] objective place to do an interview. I mean, we, we would be more than happy to do the interview ourselves in the mother's home. I mean, but we were trying to offer that as a way of having an objective standard for the interview.

Tr. at 27.

token, G.W.'s school attendance proves little regarding her overall condition for purposes of Indiana Code Section 31-33-8-7(a)(3).

In sum, Mother has failed to establish that the trial court erred in granting DCS's petition to compel. Consequently, we affirm the trial court's order.

Affirmed.

BAILEY, J., concurs.

RILEY, J., dissents with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF G.W. (Minor Child) | ) |
| | ) |
| A.W. (Mother) and J.W. (Stepfather), | ) |
| | ) |
| Appellants-Respondents, | ) |
| | ) |
| vs. | )    No. 07A01-1201-JM-6 |
| | ) |
| THE INDIANA DEPARTMENT OF | ) |
| CHILD SERVICES, | ) |
| | ) |
| Appellee-Petitioner. | ) |

**RILEY, Judge, dissenting**

I respectfully disagree with the majority's opinion to affirm the trial court's order to make G.W. available for a forensic interview at Susie's Place in Bloomington. In reaching its decision, the majority equates the DCS's request for a forensic interview of a child who is not the subject of an abuse investigation with the statutory requirement that the DCS's assessment must include "[t]he names and *conditions* of other children in the home." I.C. § 31-33-8-7(a)(3) (emphasis added). Specifically, the opinion interprets "condition" as encompassing the possibility to subject the other children in the home to an invasive forensic interview.

The majority commences its analysis with the premise that DCS's argument arises out of a

12

concern for G.W.'s 'condition.' However, DCS's appellate argument contradicts its clear intentions as evidenced by its words and actions during the trial court proceedings. At no point during the proceedings before the trial court did the DCS ever refer to its concern for G.W.'s 'condition'; rather, repeating a constant theme, the DCS hammered on its right to forensically interview G.W. and Mother's refusal thereof. DCS was overtly confident of its authority, to the point that it had scheduled G.W.'s interview at Susie's Place to take place two days after the trial court's hearing. To be sure, DCS's request is more invasive than a mere kitchen table conversation to assess G.W.'s condition in her home and in the presence of her parents. Instead, as conceded by DCS's family case manager, a forensic interview entails G.W. being taken from her parents and subjected to an examination by a certified forensic interviewer while several DCS employees and law enforcement agents watch from another room. It is my opinion that DCS lacks the statutory authority to conduct a forensic interview of a non-subject child residing in the home.

It is worth repeating that Ind. Code § 31-22-8-7 addresses the scope of assessment by the DCS and provides, in pertinent part:

> (a) The department's assessment, to the extent that is reasonably possible, must include the following:
>> (1) The nature, extent, and cause of the known or suspected child abuse or neglect.
>> (2) The identity of the person allegedly responsible for the child abuse or neglect.
>> (3) The names and conditions of other children in the home.
>> (4) An evaluation of the parent, guardian, custodian or person responsible for the care of the child.
>> (5) The home environment and the relationship of the child to the parent, guardian, or custodian or other persons responsible for the child's care.
>> (6) All other data considered pertinent.
>
> (b) The assessment may include the following:
>> (1) A visit to the child's home.

13

(2) An interview with the subject child.

(3) A physical, psychological, or psychiatric examination of any child in the home.

(c) If:

(1) admission to the home, the school, or any other place that the child may be; or

(2) permission of the parent, guardian, custodian, or other persons responsible for the child for the physical, psychological, or psychiatric examination;

under subsection (b) cannot be obtained, the juvenile court, upon good cause shown, shall follow the procedures under [I.C. §] 31-32-12.

(d) If a custodial parent, a guardian, or a custodian of a child refuses to allow the department to interview the child after the caseworker has attempted to obtain the consent of the custodial parent, guardian, or custodian to interview the child, the department may petition a court to order the custodial parent, guardian, or custodian to make the child available to be interviewed by the caseworker.

(e) If the court finds that:

(1) a custodial parent, a guardian, or a custodian has been informed of the hearing on a petition described under subsection (d); and

(2) the department has made reasonable and unsuccessful efforts to obtain the consent of the custodial parent, guardian, or custodian to interview the child;

the court shall specify in the order the efforts the department made to obtain the consent of the custodial parent, guardian, or custodian and may grant the motion to interview the child, either with or without the custodial parent, guardian, or custodian being present.

Both parties acknowledge and I agree that the use of the word "child" or "subject child" within the statute references the child who is the focus of the DCS investigation, *i.e.*, G.W.'s sister. As such, the only provision applicable to G.W. resides with I.C. § 31-33-8-7(b)(3) which specifies that the DCS may conduct an examination of any child in the home. However, because Mother refused to consent to the forensic interview, the procedures pursuant to I.C. § 31-32-12 had to be followed. *See* I.C. § 31-33-8-7(c)(2). Therefore, in the

14

absence of parental consent, the trial court could only order an examination upon certification by a physician that an emergency existed. *See* I.C. § 31-32-12. No certification was filed in the instant case.

Although the majority initially appears to accept the statutory distinction between "child" and "other children in the home," it nevertheless then muddles the interpretation of the statute by erasing this distinction in its application of subsection (d). By finding that *a child* in subsection (d) encompasses the subject child AND the other children in the home, the majority effectively makes subsection (b) of the statute obsolete. *See Humphreys v. Day*, 735 N.E.2d 837, 842 (Ind. Ct. App. 2000), *trans. denied* (Statute must be interpreted as a whole and in reference to all the other companion provisions.). In my interpretation, subsection (d) merely clarifies subsection (b)(2)— interview with the SUBJECT child—and allows the DCS to request judicial intervention to interview children who are presumed victims of abuse or neglect. Although the majority invokes its "common sense" in interpreting the statute, in essence, it just presented the DCS with a broad enlargement of its authority by effectively erasing the safeguards our Legislature granted to "other children in the home." *See* slip op. p. 9. I refuse to subscribe to the majority's interpretation of "common sense."

My interpretation is in line with the substantial interests implicated in the case before us. Our courts have recognized on several occasions that the parent-child relationship is one of the most valued relationships in our culture. *In re D.L.M.*, 725 N.E.2d 981, 983 (Ind. Ct. App. 2000). In particular, an action involving a parent's interest in the care, custody, and control of his children pertains to "perhaps the oldest of the fundamental liberty interests" recognized by the United States Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 46 (2000). Accordingly, a parent's interest in the accuracy and

justice of the decision is a commanding one. *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Although the State has a significant *parens patriae* interest in protecting the welfare of the child by intervening in the parent-child relationship when parental neglect, abuse, or abandonment are at issue, I do not find that, under the circumstance of the case before me, the State's interests trump the traditional right of parents to establish a home and raise their children. *See E.P. v. Marion Co Office of Family & Children*, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995).

Even though G.W.'s sister made an initial allegation of sexual abuse, she has since recanted and clarified that she had been angry with Mother for not spending as much time with her. She has denied making the diary entries alluding to sexual intercourse and the DCS has not established any evidence that G.W.'s sister wrote the entries. Rather, DCS has conceded that the diary entries could have been written by anyone. Despite the recantation and lack of evidence, DCS still wants to subject G.W. to an intrusive forensic interview in a strange environment by unknown interviewers merely to clarify some inconsistencies in how her sister originally reported the alleged abuse. Without good cause to believe that G.W. may be at risk for sexual abuse and without statutory grounds to grant DCS's motion, I find the motion to compel Mother to subject her minor child to a forensic interview to be an impermissible extension of DCS's authority. I would reverse the trial court's order.