856 N.E.2d 1247 (2006)
In the Matter of T.H., T.H., Jr., Children in Need of Services,
Trent Harris, Sr., Appellant-Respondent,
v.
Marion County Department of Child Services, Appellee-Petitioner, and
Child Advocates, Inc., Co-Appellee (Guardian ad Litem).
No. 49A02-0606-JV-447.
Court of Appeals of Indiana.
November 20, 2006.
*1248 Mark Small, Indianapolis, IN, Attorney for Appellant.
Carey Haley Wong, Indianapolis, IN, Attorney for Appellee.

OPINION
BARNES, Judge.

Case Summary
Trent Harris appeals the trial court's determination that his children, T.H. and T.H., Jr., are children in need of services ("CHINS"). We reverse.

Issue
The sole issue before us is whether there is sufficient evidence to support the trial court's CHINS determination.

*1249 Facts
On April 28, 2005, the Marion County Department of Child Services ("DCS") received a report, the source of which is not revealed in the record, that Harris was abusing and neglecting T.H. and T.H., Jr. Specifically, there was a claim that Harris was selling drugs and guns out of his residence where the children lived with him. T.H. and T.H., Jr. previously had been the subject of a CHINS proceeding because of their mother's cocaine abuse. The mother was not living with Harris and the children.
Caseworker Alethea Gray-Bates went to Harris's residence, accompanied by Marion County Sheriff's deputies. Harris allowed Gray-Bates and the deputies into his residence. There is no evidence that they found any indication of illegal drug usage, or that Harris was selling drugs or guns out of his residence. The residence overall also appeared clean and appropriate for children. However, a deputy did find one unsecured gun on top of the refrigerator in the kitchen. Harris was not arrested for possession of this firearm. Additionally, the children were not aware of the gun's presence. Gray-Bates was concerned, however, that the lack of proper storage for the gun posed a safety threat to the children.
Based solely on this concern, DCS asked Harris to sign a Service Referral Agreement ("SRA"). Execution of the agreement was "strictly voluntary," not mandatory. Tr. p. 29. The SRA required Harris, among other things, to submit to random drug and alcohol screenings and to submit to a parenting assessment and follow through with recommendations made by the evaluator. No programs offered as part of the SRA, however, were designed to address gun safety issues. Additionally, according to a "safety plan" completed by Gray-Bates, "safety interventions have been taken since the referral was received, and those interventions have resolved the unsafe situation for the present time. . . ." Tr. p. 47. This appears to confirm Harris's claim that he at first purchased a locker for the gun, then later disposed of the gun altogether. The gun safety issue was resolved before this CHINS proceeding was initiated.
Harris completed only one drug and alcohol screening, and he did not successfully complete a home-based counseling program that he was referred to out of the parenting assessment. The reasons the counselor gave for Harris not being successful in the program were, "Just the missed appointments and being noncompliant like answering one-word answers, stuff like that. And also he was counting on the clock of how long our appointments were  just noncompliant." Tr. p. 69. The counselor otherwise was unable to report anything negative about Harris, his home, and his interaction with T.H. and T.H., Jr., except that he thought Harris could have spent more time with them.
On September 28, 2005, DCS removed T.H. and T.H., Jr. from Harris's care and placed them in foster care without obtaining prior court approval. At the time of their removal, T.H. was in her kindergarten class and T.H., Jr. was enrolled in a Head Start program. This action was based solely upon Harris's failure to adhere to the SRA. After the removal, DCS interviewed Harris about his failure to follow the SRA. Harris replied, "I just signed it to get you people off my back." Tr. p. 61. On September 30, 2005, DCS filed a petition alleging that T.H. and T.H., Jr. were CHINS based on Harris's failure to comply with the SRA. On May 3, 2006, the trial court found that T.H. and T.H., Jr. were CHINS. Harris now appeals.

*1250 Analysis
Harris's sole argument is that there is insufficient evidence to support the trial court's CHINS determination. Indiana Code Section 31-34-1-1 provides:
A child is a child in need of services if before the child becomes eighteen (18) years of age:
(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
(2) the child needs care, treatment, or rehabilitation that:
(A) the child is not receiving; and
(B) is unlikely to be provided or accepted without the coercive intervention of the court.
DCS had the burden of proving by a preponderance of the evidence that T.H. and T.H., Jr. were children in need of services according to the above statute. See Matter of E.M., 581 N.E.2d 948, 952 (Ind.Ct. App.1991), trans. denied.
The trial court here entered findings of fact and conclusions thereon. When reviewing such findings and conclusions, case law states that we first determine whether the evidence supports the findings, and second, whether the findings support the judgment. Id. at 951. In practical terms, however, we may look first to determine whether the judgment is supported by the findings. Id. If it is not so supported, our review is concluded. Id. We will reverse a judgment only if it is clearly erroneous. Id. A judgment is clearly erroneous if it is unsupported by the findings of fact and conclusions entered on those findings. Id. In the present case, we conclude simply that the trial court's findings and conclusions do not support its judgment determining T.H. and T.H., Jr. to be CHINS. Thus, we do not inquire into whether the evidence supports the findings.
The United States Constitution recognizes a fundamental right to family integrity. Matter of Joseph, 416 N.E.2d 857, 859 (Ind.Ct.App.1981). "A fundamental right to family integrity means that our federal constitution, as a matter of substantive due process, protects the private ordering of interpersonal relationships from state intrusion." Id. Specifically, the Due Process Clause of the Fourteenth Amendment protects freedom of personal choice in family life matters. E.M., 581 N.E.2d at 952. This protected freedom of choice includes "`the parent's fundamental right to raise [his or] her child without undue interference by the state.'" Id. (quoting Wardship of Nahrwold v. Dep't of Pub. Welfare, 427 N.E.2d 474, 477 (Ind.Ct. App.1981)). This right is not unlimited, however, and when parents neglect, abuse, or abandon their children, the state has the authority under its parens patriae power to intervene. Id. at 952-53.
The trial court's findings and conclusions do not support any determination that Harris neglected, abused, or abandoned his children, nor that T.H. and T.H., Jr.'s physical or mental conditions were seriously endangered by Harris's acts or inaction. Those findings and conclusions stated in part:
FINDINGS OF FACT:
* * * * *
35. Respondent is bonded with his children and they respond to his redirection.
36. At the time of removal, Respondent's home was appropriate, utilities were on, refrigerator contained food.

*1251 37. Respondent regularly brought his children to school and picked them up at the end of the day.
38. Respondent actively participated in his children's educational programs.
39. Respondent did not physically abuse his children.
40. Respondent failed to successfully complete the SRA that he voluntarily entered into.
* * * * *
CONCLUSIONS OF LAW:
* * * * * *
9. Respondent endangered the children by failing to secure his loaded handgun.
10. Respondent endangered the children by failing to comply with the services offered in the SRA, which include drug and alcohol screens and homebased counseling.
11. The Court finds no duress in the Respondent and MCDCS [sic] voluntarily entered into the SRA.
12. Respondent's children need care and treatment that will not be provided without the coercive intervention of the Court.
App. pp. 94-96.
With respect to the issue of Harris's improper storage of the gun, it might be true that this endangered his children at one time. There is no evidence, however, that the gun still endangered the children at the time of the hearing in this case. There also is no finding and nothing in the record to indicate that "the coercive intervention of the Court" was necessary to correct the gun safety issue. DCS has never claimed, before the trial court or on appeal, that Harris failed to adequately address this issue, which is what led to the voluntary SRA. There seems to be no dispute, as evidenced by the "safety plan" prepared by Gray-Bates, that this issue was resolved, either by Harris obtaining proper storage for the gun or by disposing of it altogether.
That leaves one possible basis for finding T.H. and T.H., Jr. to be CHINS, and that is Harris's refusal to do everything that was required of him under the SRA. We decline to say that failing to complete services necessarily means a child is a CHINS unless there is some evidence of substantial parental shortcomings endangering the child that needed to be addressed by those services. There is no such evidence here. Harris volunteered to accept the services, but there is no evidence that he actually needed them. Except for the gun storage matter, the only evidence is that Harris is an acceptable parent to his children. If every parent who has ever made a mistake regarding his or her parental responsibilities was made part of a CHINS proceeding, we imagine that millions of parents would be subjected to coercive state interference in their private affairs. That cannot be the intent of the CHINS statutes, nor can it be constitutional. Parents are not perfect, and imperfect conduct can and should be addressed outside of a CHINS proceeding, if possible, in a manner that remedies the specific problem. We also observe that it would appear to be a waste of valuable resources to pursue a CHINS matter where it is not warranted.
Refusal to cooperate with the government is not, by itself, a basis for the government to interfere with parental rights and the integrity of the family unit. The fact that Harris might have initially and voluntarily agreed to participate in such services does not change this, nor does the fact that an unidentified person made allegations of drug and child abuse against Harris that never were confirmed. Harris might have neglected to participate *1252 in services, but there is insufficient evidence that he neglected his children so as to support a CHINS finding. The trial court's findings regarding Harris's failure to cooperate with DCS and complete the SRA are not sufficient to support its CHINS determination.

Conclusion
The evidence and findings are insufficient to support the trial court's determination that T.H. and T.H., Jr. are CHINS. We reverse.
Reversed.
SULLIVAN, J., and ROBB, J., concur.