**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 11 2012, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**BENJAMIN D. R. VANDERPOOL**
Vanderpool Law Firm, P.C.
Warsaw, Indiana

ATTORNEYS FOR APPELLEE:

**TODD A. WHITEHURST**
DCS, Wabash County Office
Wabash, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF A MINOR CHILD IN NEED OF SERVICES, T.C., Minor Child, | ) ) ) | |
| | ) | |
| M.C., Mother, | ) | |
| | ) | |
| Appellants-Respondents, | ) | |
| | ) | |
| vs. | ) | No. 85A02-1202-JC-139 |
| | ) | |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1111-JC-52

**September 11, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

M.C. (Mother) appeals the adjudication of T.C. as a child in need of services (CHINS). She presents three issues for our review:

1.    Whether the juvenile court's dispositional plan complied with Ind. Code § 31-34-19-10;

2.    Whether the State presented sufficient evidence T.C. was a CHINS; and

3.    Whether the trial court's disposition order complies with the requirements of Ind. Code § 31-34-19-6.

We affirm.

## FACTS AND PROCEDURAL HISTORY

During the fall of 2011, T.C., then ten years old, was absent from school for twenty-five full days and three half days. T.C.'s school contacted Mother regarding T.C.'s absences on at least two occasions, including a letter on October 11 expressing concern about T.C.'s lack of attendance. In October 2011, the Department of Child Services (DCS) intervened and offered Mother services to assist in getting T.C. to school. Nevertheless, T.C.'s absences continued.

On November 1, DCS filed a petition alleging T.C. was a CHINS based on her poor attendance at school and incomplete grades in some classes. The juvenile court adjudicated T.C. a CHINS and ordered a pre-dispositional report. On January 6, 2012, the juvenile court ordered T.C. to remain in foster care, where she had been attending school and receiving good grades, and required Mother to complete a series of services, including participation in supervised visits with T.C. and family counseling.

2

**DISCUSSION AND DECISION**

1.      The Juvenile Court's Findings and Conclusions

Mother argues the dispositional order does not comply with Ind. Code § 31-34-19-10, which provides:

> (a) The juvenile court shall accompany the court's dispositional decree with written findings and conclusions upon the record concerning the following:
>> (1) The needs of the child for care, treatment, rehabilitation, or placement.
>> (2) The need for participation by the parent, guardian, or custodian in the plan of care for the child.
>> (3) Efforts made, if the child is a child in need of services, to:
>>> (A) prevent the child's removal from; or
>>> (B) reunite the child with;
>> the child's parent, guardian, or custodian in accordance with federal law.
>> (4) Family services that were offered and provided to:
>>> (A) a child in need of services; or
>>> (B) the child's parent, guardian, or custodian;
>> in accordance with federal law.
>> (5) The court's reasons for the disposition.
> (b) The juvenile court may incorporate a finding or conclusion from a predispositional report as a written finding or conclusion upon the record in the court's dispositional decree.

The order complied with the statute.

The order indicates T.C. was removed from Mother's care due to allegations of educational neglect, and Mother was offered services prior to T.C.'s removal to no avail. It outlined the services T.C. and Mother were to complete as part of the CHINS adjudication. Its earlier order declaring T.C. a CHINS includes specific details about her removal and continued foster care. The dispositional order complies with Ind. Code § 31-34-19-10. *See In re R.P.*, 949 N.E.2d 395, 404 (Ind. Ct. App. 2011) ("the trial court's Dispositional Order is

3

sparse, but it is apparent that the trial court did consider the elements required by I.C. § 31-34-19-10").

2.      Sufficiency of the Evidence

Mother asserts DCS did not present sufficient evidence T.C. was a CHINS. A CHINS proceeding is civil in nature, so DCS must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). The CHINS petition in the instant case was filed pursuant to Ind. Code § 31-34-1-1, which states:

> Sec. 1. A child is a child in need of services if before the child becomes eighteen (18) years of age:
> > (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
> > (2) the child needs care, treatment, or rehabilitation that:
> > > (A) the child is not receiving; and
> > > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

A CHINS adjudication "focuses on the condition of the child," and not the culpability of the parent. *In re N.E.*, 919 N.E.2d at 105. The purpose of finding a child to be a CHINS is to provide proper services for the benefit of the child, not to punish the parent. *Id*. at 106.

When a juvenile court enters findings of fact and conclusions of law in a CHINS decision, we apply a two-tiered standard of review. *Parmeter v. Cass County DCS*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007), *reh'g denied*. We first consider whether the evidence supports the findings and then whether the findings support the judgment. *Id*. We may not

set aside the findings or judgment unless they are clearly erroneous. *Id*. Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id*. We give due regard to the juvenile court's ability to assess witness credibility and do not reweigh the evidence; we instead consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id*. We defer substantially to findings of fact, but not to conclusions of law. *Id*.

a. Serious Impairment of T.C.'s Mental or Physical Condition

Mother argues DCS did not prove T.C.'s physical or mental condition was "seriously" impaired or endangered as required by Ind. Code § 31-34-1-1. Mother urges us to review whether DCS proved elements of Class D felony neglect of a dependent, which Mother argues would demonstrate DCS did not present sufficient evidence to prove T.C. was a CHINS. Mother did not present this argument during the CHINS adjudication hearings, and we therefore decline to address it on appeal. *See City of Evansville v. Braun*, 677 N.E.2d 597, 600 (Ind. Ct. App. 1997) (failure to raise argument at trial waives the issue for appellate consideration), *trans. denied*.

b. T.C.'s Condition a Result of the Inability, Refusal, or Neglect of Mother

Mother argues DCS did not prove that "T.C.'s physical or mental condition was seriously impaired or endangered by anything her parent, guardian, or custodian has failed to do." (Br. of Appellant at 17.) The juvenile court found:

> Between August 22, 2011 and November 29, 2011, the child missed at least 25 days and 3 half days. Approximately 15 of those days Mother offered a myriad

5

of excuses including illness, missed bus, moving and doctor appointments. On at least one occasion following Mother's report that her child was ill, a Family Case Manager from DCS went to the residence. The child was dressed and appeared not to be ill.

On two (2) separate occasions, the Mother was sent a letter from the school expressing concern about the child's absences. In a letter dated October 11, 2011, the school requested a doctor's statement for future illness related absences. None were thereafter provided although the absences continued.

\* \* \*

As a result of [the investigation by DCS] Mother was advised of county transportation options and referred to Community Partners. Community Partners offers a variety of services to families at no cost and coordinates assistance to families in need. Mother met with a representative of Community Partners on at least one occasion, however, the child's absences continued. During the second week in October, 2011, [Family Case Manager] Reynolds, along with a school representative, went to Mother's home to meet with Mother about her child's absences. That meeting ended when Mother cursed at Ms. Reynolds.

\* \* \*

Clearly, Mother failed to address the child's absences following contacts by both the school and the DCS.

(App. at 6-7.) Mother points to other factors that could have affected T.C.'s grades in school and asserts the school had an arbitrary method of determining whether an absence was unexcused. Mother's arguments are invitations for us to reweigh the evidence and judge the credibility of witnesses at trial, which we cannot do. *See Parmeter*, 878 N.E.2d at 450 (appellate court may not reweigh evidence or judge credibility of witnesses).

### c.     Coercive Intervention of the Court Required

Mother argues DCS did not present evidence T.C. was unlikely to receive treatment or rehabilitation without the coercive intervention of the court. Mother characterizes the evidence offered as "minimal," (Br. of Appellant at 19), and as indicating only that Mother "failed to cooperate with the requests of DCS when they [sic] advised her of county

6

transportation options and advised of Community Partners." (*Id.*) Mother asserts the facts of the instant case are similar to those of *In re T.H.*, 856 N.E.2d 1247 (Ind. Ct. App. 2006), in which we held "[r]efusal to cooperate with the government is not, by itself, a basis for the government to interfere with parental rights and the integrity of the family unit." *Id.* at 1251. *T.H.* does not control.

The children in *In re T.H.* were removed based on an anonymous report that alleged Father was abusing the children and selling drugs and guns out of the house he shared with his children. On investigation of Father's residence, DCS determined the home to be appropriate, with the exception of one unsecured gun on the top of the refrigerator. Based on the discovery of the gun, DCS asked Father to sign a Service Referral Agreement (SRA), and he did so. Father eventually disposed of the gun, but a CHINS proceeding was initiated because he did not complete the services required by the SRA. In holding the trial court erred in adjudicating the children as CHINS, we noted despite Father's failure to complete services, "there is no evidence that he actually needed them" and, with the exception of the unsecured gun issue[,] which had been remedied by the time the CHINS proceeding was initiated, "the only evidence is that [Father] is an acceptable parent to his children." (*Id.* at 1251.)

By contrast, in the instant case Mother did not participate voluntarily in services, and the evidence suggests she was reluctant to do so even when ordered by the court. DCS presented evidence T.C.'s school absences were affecting her grades. Mother was informed of transportation services to help her ensure T.C. attended school, but she chose not to take

7

advantage of those services. Once a CHINS action was commenced and T.C. was placed in foster care, T.C.'s attendance and grades improved. DCS presented evidence that without court intervention, T.C. would continue to miss school, and, unlike the Father in *In re: T.H.*, Mother's failure to complete services was not the sole reason for adjudicating T.C. as a CHINS.

3.      Dispositional Plan

Mother claims the dispositional decree does not comply with Ind. Code § 31-34-19-6, which states:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
> (1) is:
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
> (2) least interferes with family autonomy;
> (3) is least disruptive of family life;
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

The juvenile court ordered, "1. The child shall continue to be a ward of Wabash County Department of [C]hild [S]ervices and continue in foster placement. 2. The mother shall consistently participate in all scheduled supervised visitations with the child at White's Family Services." (App. at 8.) Mother argues that order is not the "least restrictive" or "family like" as required by Ind. Code § 31-34-19-6.

There was evidence Mother was given an opportunity to correct T.C.'s absenteeism

8

while T.C. still lived with her, but she did not. Since T.C. has been in foster care, her attendance and grades have improved dramatically. As the evidence supports the juvenile court's findings of fact and the findings of fact support its conclusions of law, we cannot say the trial court erred in determining T.C.'s placement arrangement. *See Parmeter*, 878 N.E.2d at 450 (appellate court will not reweigh evidence and will overturn the juvenile court's decision only if it clearly erroneous).

## CONCLUSION

DCS presented sufficient evidence to prove T.C. was a CHINS. The juvenile court did not err when it ordered T.C. to live in foster care and Mother to participate in supervised visits. Finally, the Court's findings comported with Ind. Code § 31-34-19-10. Accordingly, we affirm the juvenile court's order.

Affirmed.

KIRSCH, J., and NAJAM, J., concur.