# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 14 2017, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF V.C. and J.C., Minor Children | December 14, 2017 |
| | Court of Appeals Case No. 49A04-1708-JC-1877 |
| N.C. (Mother), *Appellant-Defendant,* | Appeal from the Marion Superior Court |
| v. | The Honorable Marilyn Moores, Judge |
| Indiana Department of Child Services, *Appellee-Plaintiff* | The Honorable Rosanne Ang, Magistrate |
| | Trial Court Cause No. 49D09-1703-JC-681 49D09-1703-JC-682 |

**May, Judge.**

N.C. ("Mother") appeals the adjudication of her children, V.C. and Jo.C., (collectively, "Children"), as Children in Need of Services ("CHINS"). She argues the trial court's order is clearly erroneous because the Department of Child Services ("DCS") did not prove Children were CHINS as required by statute. We affirm.

# Facts and Procedural History

N.C. and J.C. ("Father") (collectively, "Parents"), are the parents of V.C. and Jo.C., born October 17, 2003, and September 30, 2007, respectively. On February 19, 2017, Father overdosed on heroin and passed out on Jo.C.'s bed. Mother was at work at the time. Jo.C. found his Father unresponsive and enlisted the help of his great-grandmother, who was also home. Father was taken to the hospital and recovered.

DCS investigated the incident, and spoke with Father, who admitted he had taken heroin and pain pills in the past, and had overdosed once before. Despite the couple being married for fifteen years, Mother indicated she was unaware of Father's drug use. On February 28, 2017, DCS submitted its initial intake report, which stated Father "volunteered to leave the home and not return until his drug use has been addressed[.]" (App. Vol. II at 38.) Further, the report indicated Mother "agreed to not allow [Father] to reside in the home until he is a sober caregiver." (*Id.*)

[4] On March 2, 2017, DCS filed a petition alleging Children were CHINS because Father overdosed on heroin in Jo.C.'s presence, Father admitted to using heroin, Father tested positive for opiates on February 28, 2017, and "[Mother] has failed to identify [Father's] drug use and cannot ensure the safety and well-being of [Children] while in [Father's] care." (*Id*. at 30.) On the same day, the trial court entered an order allowing Children to reside with Mother "contingent upon [Father] not residing in the home and [Mother] and [Children's] participation in homebased therapy." (*Id*. at 45.) The trial court ordered supervised parenting time for Father and authorized DCS to put services into place for Father.

[5] On June 19, 2017, the trial court held a fact-finding hearing on the CHINS petition. Father testified he did not live with Mother and Children because he was "not allowed" to do so. (Tr. at 11.) Father indicated he understood he could return after he has "[f]ive clean drug screens and meet[s] with a therapist," (*id*.), but he had not met those requirements by the time of the fact-finding hearing.

[6] Mother testified she did not know Father used drugs and had not spoken to him about the overdose that prompted the DCS investigation. Mother also testified she would have to know that Father "is not going to be under the influence of anything at all[,]" (*id*. at 21), before she would allow him to live with her and Children because she did not tolerate drug use. Mother testified she did not believe Father posed a threat to Children because "he wouldn't let anything hurt his children or any kind of harm come around his children." (*Id*. at 26.)

Mother participated in therapy as required by the trial court but stated, "I don't think that I need it." (*Id*. at 27.)

[7] At the time of the fact-finding hearing, Debra Lampkins was Mother's homebased therapist. Lampkins testified Mother denied Father had overdosed or that substance abuse occurred in the home. Lampkins indicated that if Mother "were to have acknowledged that those things did occur . . . [i]t would make it a little bit more easier [sic] to address some issues." (*Id*. at 48.)

[8] The trial court adjudicated Children as CHINS on July 17, 2017. On August 8, 2017, the trial court held a dispositional hearing. The trial court entered parental participation orders for both parents the same day. Mother's order required her to engage "in a home-based therapy program referred by the Family Case Manager and follow all recommendations." (App. Vol. II at 98.) She was also ordered to "engage in [Children's] therapy as recommended and follow all recommendations." (*Id*.) The trial court ordered Father to engage in home-based therapy and follow all recommendations; complete a substance abuse assessment and successfully complete all recommended treatment; submit to random drug screens; and engage in Children's therapy and follow all recommendations.

# Discussion and Decision

[9] A CHINS proceeding is civil in nature, so DCS must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). Ind. Code § 31-34-1-1 states:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

A CHINS adjudication "focuses on the condition of the child," and not the culpability of the parent. *In re N.E.*, 919 N.E.2d at 105. The purpose of finding a child to be a CHINS is to provide proper services for the benefit of the child, not to punish the parent. *Id.* at 106.

[10] When a juvenile court enters findings of fact and conclusions of law in a CHINS decision, we apply a two-tiered review. *Parmeter v. Cass Cty. DCS*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007), *reh'g denied*. We first consider whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We may not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record contains

no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We give due regard to the juvenile court's ability to assess witness credibility and we do not reweigh the evidence; we instead consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.* We defer substantially to findings of fact, but not to conclusions of law. *Id.*

### Challenged Finding

[11] Mother challenges the trial court's finding that "[Mother] has failed to take any action to protect the children from being exposed to [Father's] drug use." (App. Vol. II at 86.) Mother argues that finding is clearly erroneous and not supported by the evidence because Father does not live with Children, Father volunteered to move out of the home until he completed drug treatment, and Mother will not allow Father to live with Children until he completes drug treatment. The State points to evidence that Mother allowed Father to live with Children until DCS completed its investigation, over a week after Father overdosed; that Mother did not acknowledge that Father had a drug problem or that he overdosed; and that Mother testified she did not believe Father posed a threat to Children. Mother's argument is a request that we reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Parmeter*, 878 N.E.2d at 450 (appellate court cannot reweigh evidence or judge the credibility of witnesses). Mother does not challenge any other of the trial court's findings, and thus they stand as proven. *See Madlem v. Arko*, 592 N.E.2d

686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

### *Mother's Challenges to the Trial Court's Conclusions*

[12]     The trial court found:

> [Mother] engaged in homebased therapy with Debra Lampkins. In working with Ms. Lampkins, [Mother] has denied any drug use in the home and has denied that [Father] overdosed in February. Ms. Lampkins is unable to fully provide therapeutic services to [Mother] without recognition of the concerns which exist in the family home.

(App. Vol. II at 85.) Mother argues this finding does not support the trial court's conclusion "that the children are neglected or that the coercive intervention of the court is necessary." (Br. of Appellant at 17.) She asserts "[Children] are not CHINS simply because Mother failed to fully cooperate with Lampkins." (*Id.* at 18.) In support of her argument, she cites *In re T.H.*, 856 N.E.2d 1247 (Ind. Ct. App. 2006), and *M.K. v. Indiana DCS,* 964 N.E.2d 240, 247 (Ind. Ct. App. 2012). Both are inapposite.

[13]     The CHINS action in *In re T.H.* was based on Father's improper storage of his handgun and his refusal to cooperate with DCS services. We reversed the trial court's CHINS adjudication because there was no evidence "the gun still endangered the children at the time of the hearing in this case." *In re T.H.*, 856 N.E.2d at 1251. Additionally, "[w]e decline[d] to say that failing to complete services necessarily means a child is a CHINS unless there is some evidence of

substantial parental shortcomings endangering a child that needed to be addressed by these services." *Id.* Such is not the case here, as Father's drug use has not been remedied like the gun storage issues in *In re T.H.*

[14] In *M.K.*, we also reversed a CHINS adjudication despite a parent being uncooperative, explaining that "to the extent the Guardian ad Litem cites Father's evasiveness or refusal to answer questions as evidence supporting the judgment, we note that Father's reticence pertained to disclosing specific facts surrounding the events in Texas involving his own mother's treatment of Mother, based seemingly on racial grounds." *M.K.*, 964 N.E.2d at 247 n.8 (internal citations to record omitted). *M.K.* does not apply here, as the housing issues that precipitated DCS's involvement with the family in *M.K.* had been resolved by the time of the hearing, whereas Father's drug use has not been remedied.

[15] Herein, Children are not CHINS because Mother did not cooperate with her therapist. Children are CHINS because Father used drugs in the familial home, overdosed, and has not sought proper treatment, and Mother's reluctance to acknowledge Father's behaviors creates concern about her ability to protect Children if Father continues to use drugs.

[16] The trial court also found:

> [Children's] physical or mental condition is [sic] seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical

care, education, or supervision. [Father] used heroin at the family residence with [Jo.C.] in the home and nearly died in [Jo.C.'s] bed. This is not the first time that [Father] has overdosed. [Father] has failed to seek treatment for his addiction and continues to use illicit substances. [Mother] denies her husband's drug use and alleges that she would not allow him to return to the home if he were using illicit substances. However, [Mother] picked [Father] up from the hospital after his most recent overdose and allowed him to remain in the home until the involvement of the DCS. [Mother] has failed to acknowledge the severe substance abuse on the part of her husband and protect the children from the same.

(App. Vol. II at 86.) Mother argues the trial court's finding, "[Mother] picked [Father] up from the hospital after his most recent overdose and allowed him to remain in the home until the involvement of the DCS[,]" (*id.*), does not support the conclusion "that the coercive intervention of the court is necessary." (Br. of Appellant at 18.)

[17] However, that finding was not listed as supporting the trial court's conclusion the coercive intervention of the court is necessary. Instead, it was cited as a reason Children's physical or mental conditions were seriously impaired or endangered as a result of Parents' inability, refusal, or neglect to supply necessary food, clothing, shelter, medical care, education, or supervision. Further, even if the finding were erroneous, "even an erroneous finding is not fatal to a trial court's judgment if the remaining valid findings and conclusions support the judgment, rendering the erroneous finding superfluous and harmless as a matter of law." *Curley v. Lake Cty. Bd. of Elections & Registration*, 896 N.E.2d 24, 32 (Ind. Ct. App. 2008), *trans. denied*.

[18] Here, DCS presented evidence Father used heroin while at home with Jo.C. and overdosed. Father had not obtained substance abuse treatment or participated in drug screens at the time of the fact-finding or dispositional hearings, though he had been ordered to do so by the trial court. While Mother ensured Father did not live with Mother and Children, she did not acknowledge Father had a drug problem or that Father overdosed. We conclude DCS presented sufficient evidence to support the trial court's findings and the findings supported the conclusions that resulted in Children being declared CHINS. *See, e.g., In re J.L.*, 919 N.E.2d 561, 564 (Ind. Ct. App. 2009) (evidence sufficient to support CHINS adjudication when Mother was under the influence of marijuana while child was in the home).

# Conclusion

[19] DCS presented evidence Father used heroin in the family home, overdosed, and had not obtained treatment. In addition, there was evidence Mother refused to acknowledge Father's drug problem and had not benefitted from services. Based thereon, we conclude that evidence supported the trial court's findings and those findings supported the trial court's conclusion Children were CHINS. Accordingly, we affirm.

[20] Affirmed.

Vaidik, C.J., and Altice, J., concur