## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 13 2019, 10:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jarvis E. Newman III
Newman and Newman LLC
Albion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:
K.H. (Child Alleged to be in Need of Services) and R.H. (Mother);

R.H. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

November 13, 2019

Court of Appeals Case No.
19A-JC-913

Appeal from the Noble Superior Court

The Honorable Steven C. Hagen, Judge

Trial Court Cause No.
57D02-1705-JC-42

**May, Judge.**

[1] R.H. ("Mother") appeals the trial court's order terminating the Department of Child Service's ("DCS") wardship over her daughter, K.H. ("Child"). She argues the trial court violated her right to due process when it did not rule on two pending motions prior to terminating the wardship. We affirm.

# Facts and Procedural History

[2] Child was born to Mother on September 19, 2014. Mother did not notify J.C. ("Father") that he was the father of Child. Mother and Child lived with maternal grandparents. On May 18, 2017, Child was in the car with Mother when police initiated a traffic stop. Police found methamphetamine, marijuana, and paraphernalia in the car. Officers arrested Mother. Following her arrest, DCS requested that Mother complete a drug screen, which was positive for amphetamine, methamphetamine, and THC. Mother could not provide an appropriate caregiver for Child, so DCS removed Child from Mother's care at that time.

[3] On May 19, 2017, DCS filed a petition alleging Child was a Child in Need of Services ("CHINS") based on Mother's drug use, arrest, and inability to provide an appropriate caregiver for Child. On June 6, 2017, DCS filed a predispositional report with the trial court, indicating DCS was trying to locate Father, the man Mother reported as the Child's father. DCS also made recommendations regarding services for Mother should Child be adjudicated a CHINS.

[4] On June 15, 2017, Mother[1] admitted Child was a CHINS and the trial court immediately held a dispositional hearing. On July 2, 2017, the trial court ordered Mother to refrain from using illegal substances; provide random drug screens; complete psychiatric, parenting, and substance abuse assessments; and follow all recommendations from the assessments based on DCS's requested services from the June 6 predispositional report. On August 7, 2017, the trial court entered a separate parental participation order that listed the same service requirements.

[5] On October 6, 2017, DCS filed a progress report with the trial court indicating it had located Father and DNA testing completed in September confirmed Child's paternity. The report also indicated Mother had thus far been non-compliant with services and had tested positive for illegal substances on multiple occasions. On October 10, 2017, Father entered an appearance in the CHINS matter and admitted Child was a CHINS. On November 14, 2017, DCS filed a predispositional report as to Father. On December 7, 2017, the trial court entered its dispositional order as to Father based on DCS's recommendations and ordered Father to complete services including meeting with the Family Case Manager, keeping all appointments with the service providers, and visiting Child. The trial court granted Father an extended visitation with Child from December 7 through 10, 2017.

---

[1] While the exact date is unclear, Mother was released from jail prior to the June 15, 2017, hearing.

[6]     On December 13, 2017, Father filed a motion to modify Child's placement and requested Child be placed with him. He alleged he was the "non-offending" parent and Child's current placement with maternal grandmother was inappropriate because Mother also resided with maternal grandmother and continued to use drugs. (Appellee's App. Vol. II at 62.) Father indicated he had filed a Petition to Establish Paternity and Custody of Child in another court and had not been accused of any wrongdoing in the current CHINS case.

[7]     On December 19, 2017, Mother's therapist filed a report with the trial court indicating Mother had been diagnosed with PTSD; cannabis use disorder, mild; amphetamine-type substance disorder, mild; and other circumstances related to child neglect. Mother's therapist reported Mother told her that Mother's substance abuse began at age nine, and Mother was actively working on overcoming her addiction. Mother's therapist had also observed Father's visitation with Child and expressed no concerns. On December 21, 2017, the trial court held a hearing[2] on the matter and the same day entered an order granting Father's request to have Child placed with him, to commence on December 30, 2017. The order provided Mother would be allowed supervised visitation through DCS and maternal grandparents would be allowed unsupervised visitation with Child "upon the express condition that [Mother] not be present during any portion of said visitation." (*Id*. at 64.)

---

[2] The record does not include a transcript of this hearing.

[8]     On January 12, 2018, the trial court issued a Nunc Pro Tunc Order amending its December 21 order, allowing maternal grandparents "liberal reasonable unsupervised visitation (as determined by DCS) with Child upon the express condition that [Mother] not be present during any portion of said visitation." (*Id*. at 65.)  On January 23, 2018, Father filed a motion to terminate or restrict grandparent visitation.  On February 1, 2018, maternal grandparents filed a motion to intervene in the CHINS proceedings.  The trial court set a hearing on February 8, 2018, to discuss these matters.

[9]     On February 2, 2018, Mother filed a motion to reunify or show cause why reunification should not occur.  Mother alleged she had been denied visitation with Child on five dates because of weather conditions, scheduling errors, and difficulty with transportation; Father has "not been conducive to fostering the relationship between Mother and child and DCS has taken no action[,]" (*id*. at 67-8); Father "tried to prevent grandparent's [sic] from having visitation[,]" (*id*. at 68); Father "has been leaving the child with his mother for the three day period and two day period in which he works[,]" (*id*.); paternal grandmother will not allow Mother to speak with Child when Child is in paternal grandmother's care because paternal grandmother cannot allow video calls on her phone and does not have cellular signal to allow regular calls; Child had complained her "bottom hurt[,]" (*id*.); the parties disagreed regarding how to potty train Child; and Child "pleads with Mom that she doesn't want to go back to Dad's house saying she wants to go home and be with Mom."  (*Id*. at

69.)  The trial court added Mother's motion to the items to be discussed during the February 8 hearing.

[10]  On February 6, 2018, Mother filed a motion to correct error, asking the trial court to either: (1) vacate and dismiss the CHINS proceeding, or (2) restore the June 22, 2017, dispositional decree or have a new evidentiary hearing regarding Child's placement with maternal grandparents.  Mother argued one of those actions was required because:

> 1.  The CHINS judgment was erroneous as no determination of serious endangerment or impairment was made.
>
> 2.  The current placement judgment is not supported by the evidence contained in the record.
>
> 3.  The current placement judgment is against the weight of the evidence presented to the Court.
>
> 4.  The current placement judgment is a modification of the Mother's dispositional order which order was made contrary to her procedural due process rights.

(*Id*. at 71-2.)  Mother also filed a memorandum of law in support of her motion to correct error.

[11]  On February 8, 2018, the trial court held a hearing and denied maternal grandparents' motion to intervene.  On February 28, 2018, the trial court denied Mother's motion to correct error.  The trial court set a review hearing for March 15, 2018, and an evidentiary hearing on all pending motions for April

12, 2018.  On March 15, 2018, the trial court held the review hearing.  During the March 15 hearing, the trial court noted that the paternity court would likely deal with Child's custody during a hearing in May and "it's just a question then of cleaning up after the end of it all." (Tr. Vol. II at 43.)  The trial court then vacated the April 12 hearing and set a hearing for August 30, 2018.  On April 11, the trial court issued an order finding DCS, Child, and Father had complied with Child's case plan and that Child's placement with Father was appropriate.  However, Mother had only partially complied with Child's case plan, had tested positive for illegal drugs during the reporting period, and had not benefitted from services.  Services were to continue and Child was to remain with Father.

[12]   On April 2, 2018, Mother filed a notice of appeal which was subsequently dismissed with prejudice.[3]  On April 12, Mother filed a motion to reconsider the trial court's order of April 11, which dealt with the issues presented at the March 15 hearing.  In her motion to reconsider, Mother alleged "numerous factual errors and insufficient findings" including that one of Mother's attorneys was not named in the order; one of the DCS attorneys was improperly included; Father's name was misspelled; the number of times Mother tested

---

[3] On June 25, 2018, Mother filed her appellant's brief challenging her admission to the CHINS allegations and Child's subsequent placement with Father.  On August 13, 2018, DCS filed a motion to dismiss Mother's appeal as untimely.  On September 14, 2018, this court dismissed Mother's appeal with prejudice.  On October 22, 2018, Mother filed a petition for rehearing, which this court denied on November 27, 2018.  Mother then filed a petition to transfer to the Indiana Supreme Court on December 27, 2018, which our Indiana Supreme Court denied on February 28, 2019.

positive for drugs during the reporting period was incorrect; Mother's participation in certain services was not reported; and generally, Father's compliance with the case plan was overemphasized and Mother's progress was ignored.

[13] On May 29, 2018, the paternity court awarded Father physical and legal custody of Child to be effective upon the CHINS court's approval or the dismissal of the CHINS proceedings. *See In re Paternity of K.H.*, 116 N.E.3d 504, 509 (Ind. Ct. App. 2018), *trans. denied*. On June 7, 2018, DCS filed a motion to terminate the CHINS wardship because Father had been granted physical and legal custody of Child in the paternity case. On August 17, 2018, DCS filed a motion for a permanency hearing. The trial court scheduled the hearing for August 30, 2018. Mother filed a motion to stay hearing on August 27, 2018, and the court noted in the Chronological Case Summary that it would consider that motion at its August 30 hearing.

[14] The trial court held a hearing on August 30, 2018, and denied DCS's motion for a permanency hearing because Mother's appeal of the trial court's CHINS order had yet to be decided. On September 19, 2018, DCS again filed a motion to terminate its wardship of Child because our court dismissed Mother's appeal of the CHINS adjudication with prejudice on September 14, 2018. Mother filed an objection to the termination of DCS's wardship. On November 28, the trial court held a hearing and took the matter under advisement. On November 29, Mother filed another objection to the termination of DCS's wardship, arguing

that she was in the process[4] of appealing the paternity order and that the outcome of that appeal could affect the CHINS proceedings. We issued an opinion on Mother's appeal of the paternity order on December 13, 2018, and our Indiana Supreme Court denied transfer on February 28, 2019.

[15] On March 21, 2019, the trial court held a hearing on DCS's motion to terminate wardship of Child. DCS argued the reasons for removal had been remedied because "reunification with a parent has occurred. The child is safe with father, that occurred through a custodial modification out of the custodial court[.]" (Tr. Vol. II at 48.) Father agreed with DCS and noted Child had been in his care for over a year. The Court Appointed Special Advocate indicated Child was "doing great" in Father's care. (*Id.* at 51.) Mother argued there were "factual issues that need to be determined" and "there are pending motions on the case . . . [specifically] a motions [sic] to reunify [and] a motion to correct the record[.]" (*Id.* at 52.) DCS maintained Mother's arguments were an attempt at a "second bite of the apple" and the issues Mother contended were still pending "were addressed at the appellate level." (*Id.* at 54.) The same day, the trial court issued an order terminating DCS's wardship over Child because "[p]ermanency for the Child has been achieved through Reunification with Father. The Indiana Supreme Court has denied appellant's (Mother) petition to transfer." (Appellant's App. at 19.)

---

[4] Mother filed a notice of appeal of the paternity order on August 1, 2018.

# Discussion and Decision

[16] The U.S. Constitution protects the relationship between parent and child. *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *see also Matter of Joseph*, 416 N.E.2d 857, 860 (Ind. Ct. App. 1981). The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to direct the care, custody, and control of their children. *Troxel*, 530 U.S. at 66. However, this right is not unlimited, and the State has the authority under its *parens patriae* power to intervene when necessary to protect children within its borders. *In re T.H.*, 856 N.E.2d 1247, 1250 (Ind. Ct. App. 2006). We have consistently held a parent's rights must be subordinated to the best interests of the child. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997).

[17] Mother argues the trial court violated her right to due process when it terminated DCS's wardship of Child before ruling on two pending motions. She argues that, because the trial court did not rule on those motions or hold hearings thereon, she did not have an "opportunity to show that she is a good candidate for reunification with her child[.]" (Br. of Appellant at 6.)

[18] In a proceeding involving parental rights, parents have certain due process rights that essentially require those proceedings be fundamentally fair. *E.P. v. Marion Cty. Ofc. of Family & Children*, 653 N.E.2d 1026, 1031 (Ind. Ct. App. 1995). When we determine if a parent's due process rights have been violated, we balance three factors: "1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the

countervailing governmental interest supporting use of the challenged procedure." *A.P. v. Porter Cty. Ofc. of Family & Children*, 734 N.E.2d 1107 (Ind. Ct. App. 2000), *reh'g denied*. Ultimately, the resulting balance of those factors must provide "the opportunity to be heard at a meaningful time and in a meaningful manner." *In re G.P.*, 4 N.E.3d 1158, 1166 (Ind. 2014).

[19] We agree that Mother's interest in maintaining a relationship with her Child is substantial, though we note that the termination of DCS wardship does not terminate Mother's rights to Child – instead, it requires that she abide by the parenting time guidelines as set forth by the paternity court in its custody order. We also agree that the governmental interest here – the protection of Child – is substantial. Thus, we turn to the risk of error of the action.

[20] This CHINS case has been pending for over two years. Child has been placed with Father for most of that time. Two courts – the CHINS court and the paternity court – have considered the fitness of each parent to care for Child over a series of multiple hearings. Mother has consistently tested positive for illegal substances and has not participated in the services required by the CHINS depositional order. The motions to be ruled on – one contesting Child's placement with Father and the other requesting certain changes in an order that is no longer appealable – are moot considering the fact that the focus of the CHINS inquiry – Child – is no longer in need of the coercive intervention of the court. *See, e.g, M.S. v. Indiana Dept. of Child Services*, 999 N.E.2d 1036, 1041 (Ind. Ct. App. 2013) (affirming dismissal of DCS wardship when mother

was "ill-equipped" to care for Child and continued placement with father satisfied all concerns set forth in CHINS petition).

[21] Based on these facts, we conclude the risk associated with the termination of DCS's wardship of Child is low because Mother had multiple opportunities in two different courts to be heard regarding her fitness to care for Child and she appealed rulings by those courts in two separate appellate proceedings, one which was dismissed as untimely and the other which was affirmed. Both appeals were also denied transfer by our Indiana Supreme Court. As such, Mother's due process rights were not violated.

# Conclusion

[22] The trial court did not violate Mother's due process rights when it terminated DCS's wardship of Child prior to ruling on two pending motions concerning issues that had already been litigated before the trial court. Accordingly, we affirm.

[23] Affirmed.

Najam, J., and Bailey, J., concur.