


FILED

Apr 29 2024, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

J.R.,

*Appellant-Petitioner*

v.

Indiana Department of Child Services,

*Appellee-Respondent*

---

April 29, 2024

Court of Appeals Case No.
23A-MI-2166

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No.
49D06-2210-MI-34568

---

**Opinion by Judge Tavitas**

Judges Mathias and Weissmann concur.

**Tavitas, Judge.**

## Case Summary

[1] After the Department of Child Services ("DCS") substantiated a report of child neglect against her, J.R. ("Mother") filed an administrative appeal, and the administrative law judge ("ALJ") recommended that DCS unsubstantiate the report. DCS's Final Agency Authority ("Agency"), however, rejected the ALJ's recommendation and affirmed the substantiation determination. Mother then filed a petition for judicial review, and the trial court affirmed the Agency's determination. Mother appeals and argues that the trial court erred because the Agency's determination is not supported by substantial evidence. We are not persuaded, and we, accordingly, affirm.

## Issue

[2] Mother raises one issue on appeal, which we restate as whether the trial court erred by affirming the Agency's substantiation of a report of child neglect against Mother.

## Facts

[3] Mother's daughter is Je.B. ("Daughter"), and Daughter's father is Jo.B. ("Father"). Mother and Father live separately. On Friday, January 15, 2021, Daughter was six years old, and Daughter's paternal grandmother watched her

while Mother and Father celebrated Mother's birthday. Mother and Father used marijuana and cocaine while celebrating, and Mother then returned to her residence.

[4] Father exercised his regularly scheduled parenting time with Daughter that weekend, and on the morning of Monday, January 18, 2021, Mother drove to Father's house to pick up Daughter. After eating breakfast at Father's house, between approximately 8:30 a.m. and 10:00 a.m., Mother had a headache, so she used marijuana and took a nap. Mother was not in Daughter's presence when she used the marijuana.

[5] Between approximately 1:30 and 2:30 p.m., Mother and Daughter left Father's residence to drive to an appointment and were involved in a "head-on collision," during which the "airbags deployed." Appellant's App. Vol. II pp. 124, 111. Mother asked another motorist to drive her and Daughter to the hospital because Daughter complained of stomach pain after the car accident. Along the way, Mother asked a police officer to escort them.[1]

[6] At the hospital, Mother was frustrated with hospital staff because she believed they kept repeating the same questions and were not examining Daughter. According to Nurse Haley Himmelhaver, Mother was "erratic," "extremely irate," and Mother's behavior "did not match up with the situation." *Id.* at 101,

---

[1] Mother was not charged with any offenses related to the car accident.

122, 123. Nurse Himmelhaver attempted to calm Mother down, and Mother admitted that she used marijuana that morning.

[7] Later that day, DCS received a report alleging that Mother neglected Daughter, and Family Case Manager ("FCM") Dava Bonds went to the hospital and spoke with Mother. Mother admitted to using marijuana prior to the car accident. DCS requested and Mother submitted to an "instant urine drug screen," which was positive for marijuana and cocaine. *Id.* at 125. Mother then admitted to using marijuana and cocaine on the previous Friday. The drug screen was sent to the lab for further testing, which was negative for cocaine. The testing revealed, however, that Mother had a THC[2] concentration of 804 nanograms per milliliter. The threshold for a positive result was 50 nanograms per milliliter. Meanwhile, hospital staff determined that Daughter was not injured, and she was released.

[8] Based on the conversation with Mother and Mother's positive drug screens, FCM Bonds believed that Mother was "possibly under the influence at the time of the accident." *Id.* at 137. FCM Bonds submitted an assessment report to DCS recommending that the neglect allegation be substantiated on the grounds that Mother "failed to provide [Daughter] with a safe, stable, and appropriate living environment free from neglect and substance abuse," and DCS later approved the substantiation recommendation. *Id.* at 46-47. DCS also filed a

---

[2] THC is the common abbreviation for tetrahydrocannabinol, which is the main active chemical in marijuana. *Medina v. State*, 188 N.E.3d 897, 900 n.1 (Ind. Ct. App. 2022).

petition in the Marion County Superior Court alleging that Daughter was a child in need of services ("CHINS") based upon Mother's alleged neglect; however, the CHINS case was later dismissed on April 7, 2021, without a fact-finding hearing.

[9] Mother subsequently filed a request for an administrative hearing to challenge DCS's substantiation of the neglect allegation, and the parties appeared before an ALJ for an administrative hearing on November 9, 2021. Mother testified and admitted to using marijuana and cocaine during her birthday celebration and to using marijuana on the morning of the car accident. Mother also admitted that hospital staff thought her "behavior was erratic"; however, Mother attributed her behavior to anxiety and frustration with hospital staff. *Id.* at 101. Mother called Indianapolis Metropolitan Police Officer Logan Atzhorn as a witness. Although Officer Atzhorn testified that he would have conducted "further investigation" if he suspected a driver of being under the influence, he did not remember this incident, Mother, or the completion of a vehicle accident report for the January 18 car accident. *Id.* at 96. Mother did not offer an accident report as an exhibit.

[10] DCS entered into evidence Mother's drug screen results as an exhibit, to which Mother did not object. Although Nurse Himmelhaver did not testify at the hearing, FCM Bonds testified regarding Nurse Himmelhaver's statements concerning Mother's erratic behavior at the hospital, to which Mother objected on hearsay grounds. The ALJ overruled the objection. FCM Bonds further testified that she was unaware of the cause of the car accident; however, she

requested that the ALJ uphold the substantiation finding. She stated that the fact that the trial court dismissed the CHINS case only meant that the trial court "no longer need[ed] to be involved with the family" and did not "mean that the allegation being substantiated against [Mother was] not true." *Id*. at 134-35.

[11] On December 9, 2021, the ALJ issued its notice of hearing recommendation and recommended that DCS unsubstantiate the neglect allegation. The ALJ determined that, although Mother used marijuana prior to the car accident, DCS had not proved a "causal connection between [Mother's] use of marijuana and the vehicular accident" or that Mother was impaired at the time of the car accident. *Id*. at 40. The ALJ relied, in part, on Officer Atzhorn's testimony and discounted Nurse Himmelhaver's statements to FCM Bonds as hearsay.

[12] The ALJ's recommendation was submitted to the Agency for a "Final Agency Review." Appellant's App. Vol II p. 42. On September 22, 2022, the Agency issued its "Notice of Final Agency Action," wherein the Agency rejected several of the ALJ's findings and the ALJ's recommendation and instead affirmed the substantiation finding. *Id*. at 25. Because Officer Atzhorn had no memory of Mother or the car accident, the Agency disagreed with the ALJ's finding that Officer Atzhorn's testimony indicated Mother was sober at the time of the car accident. The Agency concluded:

> The facts of this case combine to show that it is more likely than not, that [Mother's] actions in smoking marijuana and then driving with her child in the vehicle, put that child's physical health in serious danger. [Mother] had a high degree of marijuana in her system when she was involved in a vehicle

collision. The use of marijuana near in time to the accident is not merely a coincidence. It is commonly known that marijuana impairs judgment and physical reaction time and that such impairment is incompatible with driving. [Mother's] behavior afterward was "very irate" and "out of the ordinary" for some time after the collision. Irrational behavior is also a common sign of intoxication from drugs or alcohol. Finally, [Mother] flagged down a stranger rather than calling the police. That is highly odd behavior in today's world, and likely due to [Mother's] mental impairment caused by marijuana. Given [Mother's] awareness of her condition, she was likely concerned that police or emergency personnel would discover she was [intoxicated] and would find the accident to have been her fault. Indeed, [Mother] likely further endangered her child by flagging down a stranger to go to the hospital instead of calling an ambulance. All of this evidence, combined, equates to proof by a preponderance of the evidence that [Mother's] impairment put her daughter in serious danger.

*Id*. at 23. The Agency, thus, concluded that "DCS was persuasive, by a preponderance of the evidence, in proving that [Mother] was responsible for the neglect of [Daughter]." *Id.*

[13] Mother filed a petition for judicial review of the Agency's substantiation determination on October 5, 2022. The trial court held a hearing on the petition on June 12, 2023, and on August 22, 2023, the trial court denied the petition. The trial court determined that, although Mother's "post-accident actions" did not support the Agency's substantiation finding, Mother was "likely impaired, to some degree" at the time of the car accident, and her "pre-accident decisions" in driving with Daughter in the car after using marijuana earlier that morning did support the finding. *Id*. at 209. Mother now appeals.

# Discussion and Decision

[14] Mother challenges the trial court's denial of her petition for judicial review of the Agency's substantiation of a report of child neglect against her. She argues that the Agency's substantiation determination is not supported by substantial evidence. We begin by explaining the procedures leading to this appeal and our standard of review. We then explain our conclusion that, contrary to Mother's argument, substantial evidence supports the Agency's decision here.

## I. Relevant Law and Standard of Review

[15] DCS is statutorily required to assess reports of child neglect and to "classify reports as substantiated or unsubstantiated." Ind. Code § 31-33-8-12; *see also* Ind. Code § 31-33-8-7 (discussing the requirements for the assessment). DCS substantiates a report "whenever facts obtained during an assessment of the report provide a preponderance of evidence" for DCS to determine "that child abuse or neglect has occurred."[3] Ind. Code § 31-9-2-123. Under certain circumstances, the alleged perpetrator of the child abuse or neglect may then request an administrative hearing before an ALJ to "contest the classification of a substantiated report . . . ." Ind. Code § 31-33-26-8(c)(3). At this hearing,

---

[3] A substantiation of abuse or neglect results in the perpetrator being placed in the Child Protection Index, "a centralized, computerized child protection index to organize and access data regarding substantiated reports of child abuse and neglect that [DCS] receives from throughout Indiana" established pursuant to Indiana Code Section 31-33-26-2. "An individual identified as a perpetrator of child abuse or neglect in a substantiated report may file a petition with a court exercising juvenile jurisdiction in the county in which the individual resides, requesting that the court order [DCS] to expunge the substantiated report and related information." Ind. Code 31-33-27-5(b).

DCS "must prove by a preponderance of credible evidence that the perpetrator is responsible for the child's abuse or neglect." Ind. Code § 31-33-26-9(b).

[16] The ALJ then makes a "recommendation" that the Agency "will review" in a process called "Final Agency Review" for the issuance of an ultimate "Final Agency Action." Appellant's App. Vol. II p. 42. "Final Agency Review can result in the Administrative Law Judge's recommendation being adopted, affirmed, modified, dissolved or remanded for further action." *Id*.

[17] Following the issuance of the Final Agency Action, a qualifying party may then file a petition for judicial review with the appropriate trial court pursuant to the Administrative Orders and Procedures Act ("AOPA"), Indiana Code Chapter 4-21.5-5. The AOPA "provides the exclusive means for judicial review of a final agency action" and governs this proceeding. *Ind. Fam. and Social Servs. Admin. v. Meyer*, 927 N.E.2d 367, 370 (Ind. 2010) (citing Ind. Code § 4-21.5-5-1). Under the AOPA, the trial court's decision is "appealable in accordance with the rules governing civil appeals from the courts." Ind. Code § 4-21.5-5-16.

[18] When we review the trial court's decision on an administrative agency's final agency action, "we stand in the trial court's shoes." *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 991 (Ind. 2014). At the time of the proceedings here, the AOPA provided that we may set aside an agency's action only if it is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence.[4]

Ind. Code § 4-21.5-5-14(d). We defer to the agency's findings if the findings are supported by substantial evidence, and we "ordinarily" review an agency's conclusions of law de novo. *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 619 (Ind. 2019). We, however, afford "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute . . . great weight, unless this interpretation would be inconsistent with the statute itself." *Id.* We do not "reweigh the evidence," and we "consider the record in the light most favorable" to the agency's decision. *Sanchez*, 18 N.E.3d at 992.

[19] As the party seeking judicial review, Mother bears the "burden of demonstrating the invalidity" of the Agency's action. *Id*. Here, Mother challenges the Agency's substantiation determination by arguing that the decision was unsupported by substantial evidence as required by the AOPA. For the purposes of judicial review, "[s]ubstantial evidence is more than a scintilla, but something less than a preponderance of the evidence." *Ind. Dep't of Nat. Res. v. Prosser*, 132 N.E.3d 397, 401 (Ind. Ct. App. 2019), *trans. denied*;

---

[4] In 2024, our General Assembly amended subsection (d)(5) to require that "a person seeking judicial relief" be "prejudiced by an agency action that is . . . unsupported by a preponderance of the evidence," rather than substantial evidence. Pub. L. No. 128-2024 (effective July 1, 2024). "Absent explicit language to the contrary, statutes generally do not apply retroactively," *N.G. v. State*, 148 N.E.3d 971, 973 (Ind. 2020), and we discern no such language in the amendment. Additionally, neither party argues that this amendment affects our decision. Accordingly, we review this case under the version of the AOPA in effect at the time of proceedings below, which employs the substantial evidence standard.

*accord Ind. High Sch. Athletic Ass'n, Inv. v. Watson*, 938 N.E.2d 672, 680-81 (Ind. 2010).

## II.  The Agency's substantiation determination is supported by substantial evidence

Mother argues that the Agency's substantiation determination is not supported by substantial evidence because it relies on hearsay and because Mother's marijuana use is insufficient to support a substantiation of neglect.  We, however, conclude that the Agency's substantiation determination is supported by substantial evidence.

We first address Mother's argument that the Agency's substantiation determination impermissibly relied upon Nurse Himmelhaver's hearsay statements to FCM Bonds.  Hearsay is defined as a statement that: (1) "is not made by the declarant while testifying at the trial or hearing"; and (2) "is offered into evidence to prove the truth of the matter asserted."  Evid. R. 801(c).  Indiana Code Section 4-21.5-3-26 governs the admission of hearsay evidence in administrative hearings in the relevant part of subsection (a):

> [I]n the absence of proper objection, the administrative law judge may admit hearsay evidence.  If not objected to, the hearsay evidence may form the basis for an order.  However, if the evidence is properly objected to and does not fall within a recognized exception to the hearsay rule, the resulting order may not be based solely upon the hearsay evidence.

Additionally, Indiana Code Section 31-33-26-9(c) governs administrative hearings before DCS and similarly provides:

> During an administrative hearing under this section, the administrative hearing officer shall consider hearsay evidence to be competent evidence and may not exclude hearsay based on the technical rules of evidence. If not objected to, the hearsay evidence may form the basis for an order. However, if the evidence is properly objected to and does not fall within a recognized exception to the hearsay rule, the resulting order may not be based solely upon the hearsay evidence.

*See also* 465 Ind. Admin. Code 3-3-13(d) ("The ALJ may admit and consider hearsay evidence."). This "codification of the common law 'residuum rule' has been interpreted as requiring some corroborative evidence to support an administrative order when hearsay has been admitted over objection." *Amoco Oil Co., Whiting Refinery v. Comm'r of Labor*, 726 N.E.2d 869, 874 (Ind. Ct. App. 2000) (quoting *Hinkle v. Garrett-Keyser-Butler Sch. Dist.*, 567 N.E.2d 1173, 1178 (Ind. Ct. App. 1991), *trans. denied*).

[22] We are not persuaded that the Agency's substantiation determination impermissibly relied on Nurse Himmelhaver's hearsay statements to FCM Bonds because other evidence corroborates these statements and supports the Agency's determination. Mother admitted to FCM Bonds that she used marijuana and cocaine several days before the car accident and that she used marijuana again several hours before the car accident. FCM Bonds's testimony regarding Mother's statements is not hearsay. *See* Evid. R. 801(d)(2) (defining statements made by an opposing party and offered against that party as not hearsay). Additionally, Mother admitted in her testimony before the ALJ that

hospital staff believed her behavior was "erratic," and Mother did not move to strike this testimony.[5]  Appellant's App. Vol. II p. 101.

[23]  Next, Mother argues that her marijuana use is insufficient to support a substantiation of neglect.  We begin by noting that, although the CHINS proceeding against Mother was dismissed, the elements required to prove child neglect for the purposes of a substantiation determination are different than the elements required to prove child neglect in a CHINS proceeding.  For example, in a CHINS adjudication pursuant to Indiana Code Section 31-34-1-1, DCS must prove the following:

> [B]efore the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
>> (A) when the parent, guardian, or custodian is financially able to do so; or
>>
>> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so; and

---

[5] To the extent Mother also argues that the Agency impermissibly relied on the drug screen results as hearsay, Mother did not object to the drug screens as hearsay at the hearing, so they may form a basis for the Agency's determination.  *See Clay v. Marrero*, 774 N.E.2d 520, 521 n.4 (Ind. Ct. App. 2002) (citing Indiana Code Section 4-21.5-3-26(a) and holding that, even if AOPA governed petitioner's hearsay challenge, petitioner waived challenge by failing to lodge a hearsay objection at the hearing).

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

[24] For the purposes of substantiating an assessment report, however, child "neglect" refers to a child described in Indiana Code Section 31-34-1-1, among other statutes, "regardless of whether the child needs care, treatment, rehabilitation, or the coercive intervention of a court." Ind. Code § 31-9-2-14(a)[6]; *see* Ind. Code § 31-9-2-133 (similarly defining "[v]ictim of child abuse or neglect" for the purposes of DCS report assessments); *In re A.H.*, 992 N.E.2d 960, 968 (Ind. Ct. App. 2013) (noting that the "extent and nature of DCS's role in completing an assessment under Ind. Code § 31-33-8-7 . . . to determine whether a report is substantiated is clearly distinct from the coercive intervention of DCS on behalf of the state under . . . CHINS proceedings"). A substantiation determination, thus, requires fewer elements than a CHINS adjudication.

[25] The issue in this case is not whether Mother's conduct constitutes child neglect for the purposes of a CHINS adjudication, but rather whether it constitutes child neglect for the purposes of the Agency's substantiation determination under Indiana Code Section 31-9-2-14(a). Thus, although the trial court

---

[6] The statute has since been amended; however, the amendments do not affect our analysis.

dismissed the CHINS case against Mother, because different elements govern substantiation determinations and CHINS adjudications, the dismissal of the CHINS case does not necessarily mean that the substantiation determination was erroneous. And we conclude that the substantiation determination here was not erroneous because it was supported by substantial evidence before the Agency.

[26] Mother admitted to using marijuana several hours before driving with Daughter in the car, and Mother and Daughter were subsequently involved in a head-on car accident. Mother asked a stranger to drive her and Daughter to the hospital, and Mother's behavior was "erratic" and "did not match up with the situation" at the hospital. Appellant's App. Vol. II pp. 101, 123. Mother later tested positive for marijuana with a concentration of 804 nanograms of THC per milliliter.

[27] For the purposes of the Agency's substantiation determination, this meets the low threshold of substantial evidence for DCS to conclude that Mother was impaired at the time she drove with Daughter in the car. [7] Whether or not Mother's impairment caused the car accident or whether Daughter was actually injured is beside the point because Mother endangered Daughter merely by

---

[7] Although Mother points out that Officer Atzhorn testified he would have conducted "further investigation" if he suspected a driver of being under the influence, his role in the instant car accident is unclear because he did not remember Mother or the car accident. Appellant's App. Vol. II p. 96. And even if Officer Atzhorn's testimony suggests that Mother was sober at the time of the car accident, we do not "reweigh the evidence." *Sanchez*, 18 N.E.3d at 992.

driving with Daughter after using marijuana. *Cf. K.B. v. Ind. Dep't of Child Servs.*, 24 N.E.3d 997, 1003 (Ind. Ct. App. 2015) (citing *In re R.P.,* 949 N.E.2d 395, 401 (Ind. Ct. App. 2011)) (noting that, in CHINS cases, a child may be "endangered" even if the child is not actually "physically or emotionally harmed").

[28] In arguing that her marijuana use is insufficient to support the substantiation determination, Mother relies on *Ad.M. v. Indiana Department of Child Services*, 103 N.E.3d 709 (Ind. Ct. App. 2018), which we find distinguishable.[8] In that case, DCS alleged that the children were CHINS due, in part, to the mother's marijuana use. *Id*. at 713. The DCS caseworker, however, could not explain how the mother's marijuana use "impacted" the children at all. *Id*. at 714. A panel of this Court ultimately held that the mother's use of marijuana alone did not support a finding that the children were CHINS because DCS did not present any evidence that the mother's drug use "seriously endangered" the children. *Id*.

[29] Unlike in *Ad.M.*, here we are reviewing a substantiation determination rather than a CHINS determination. Moreover, Mother did not merely use marijuana, but rather drove with Daughter in the car after using marijuana.

---

[8] Mother also relies on an unpublished decision, *In re J.E.*, Case No. 49A02-1705-JC-1026 (Ind. Ct. App. Oct. 31, 2017) (mem.). Pursuant to Appellate Rule 65(D)(2), only unpublished decisions issued on or after January 1, 2023, may be cited for persuasive value, so we do not consider *J.E.*

Accordingly, we conclude that substantial evidence supports the Agency's substantiation determination, and we affirm the judgment of the trial court.[9]

## Conclusion

[30] Substantial evidence supports DCS's substantiation determination. Accordingly, we affirm the judgment of the trial court.

[31] Affirmed.

Mathias, J., and Weissmann, J., concur.

ATTORNEYS FOR APPELLANT

C. Matthew Zentz
Thomas B. Roberts
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Frances Barrow
Supervising Deputy Attorney General
Indianapolis, Indiana

---

[9] We also note that, as DCS points out, Mother may petition to have the substantiation of neglect determination expunged. *See* Ind. Code § 31-33-27-5.